[J-52-2013] [MO: Eakin, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 657 CAP |
| | : | |
| Appellee | : | Appeal from Order entered on 4/4/12 in |
| | : | the Court of Common Pleas of |
| | : | Montgomery County, Criminal Division, at |
| v. | : | No. CP-46-CR-0002785-2005 |
| | : | |
| | : | |
| JOHN EICHINGER, | : | |
| | : | |
| Appellant | : | ARGUED:  June 19, 2013 |

## CONCURRING OPINION

**MR. CHIEF JUSTICE CASTILLE**          **DECIDED:  December 31, 2014**

I join the Majority Opinion as well as the Concurring Opinion by Mr. Justice Stevens.  I write separately because this state capital case is another example of the consequences of federal taxpayer money being diverted to misuse, to fund the obstructionist agenda by appellant's counsel, the Federal Community Defender's Office ("FCDO").[1]  There is no colorable question respecting appellant's guilt for the brutal murders of three women and a three-year-old infant.  At the guilt phase of his bench trial, appellant did not offer a defense, did not contest the charges against him, and stipulated to the evidence.  Thus, this is another matter where the claims on collateral review should have been limited.  But, enter the self-appointing and well-financed

---

[1] In the court below, appellant was represented by three FCDO lawyers: Michael Wiseman, Esquire, Hunter Labovitz, Esquire, and Maria K. Pulzetti, Esquire. The FCDO Briefs on appeal were prepared by Attorneys Labovitz and Pulzetti.

FCDO, which burdened first the PCRA[2] court, and now this Court, with an avalanche of issues obviously seeking primarily to cause delay.

As explained by the Majority, the FCDO sought appointment by the U.S. District Court for the Eastern District of Pennsylvania three weeks after the U.S. Supreme Court denied *certiorari* on appellant's direct appeal, and was appointed to represent appellant for purposes of federal *habeas corpus* review. The FCDO then used the ruse of that appointment to enter its appearance in state court. The FCDO stalled the collateral review process by filing a 144-page amended PCRA petition nearly two years later, raising twenty-seven claims of error with numerous sub-issues. The PCRA court then conducted twenty-two days of hearings, during which the FCDO had two or three lawyers present each day, and presented no less than five mental health experts.

In response to the FCDO's scorched-earth attack upon appellant's trial counsel and the Commonwealth's final judgment, the PCRA court set aside its other cases and senior judges were enlisted to keep the court running. The PCRA court detailed the effect of the FCDO agenda in its opinion, which I memorialize here:

> If ever there were a criminal deserving of the death penalty it is John Charles Eichinger. His murders of three women and a three-year-old girl were carefully planned, executed and attempts to conceal the murders were employed. There is no doubt that Appellant is guilty of these killings. There is overwhelming evidence of his guilt, including multiple admissions to police, incriminating journal entries detailing the murders written in Appellant's own handwriting and DNA evidence.
>
> We recognize that all criminal defendants have the right to zealous advocacy at all stages of their criminal proceedings. A lawyer has a sacred duty to defend his or her client. Our codes of professional responsibility additionally call upon lawyers to serve as guardians of the law, to play a vital role in the preservation of society, and to adhere to the highest standards of ethical and moral conduct. Simply stated, we all are

---

[2] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

called upon to promote respect for the law, our profession, and to do public good. Consistent with these guiding principles, the tactics used in this case require the Court to speak with candor. This case has caused me to reasonably question where the line exists between a zealous defense and an agenda-driven litigation strategy, such as the budget-breaking resource-breaking strategy on display in this case. Here, the cost to the people and to the trial Court was very high. This Court had to devote twenty-two full and partial days to hearings. To carry out the daily business of this Court visiting Senior Judges were brought in. The District Attorney's capital litigation budget had to have been impacted. With seemingly unlimited access to funding, the Federal Defender came with two or three attorneys, and usually two assistants. They flew in witnesses from around the Country. Additionally, they raised overlapping issues, issues that were previously litigated, and issues that were contrary to Pennsylvania Supreme Court holdings or otherwise lacked merit.

Opinion, Carpenter, J., July 25, 2012, at 1-2.

The abuses did not end with the FCDO attack at the PCRA trial level. After the PCRA court denied relief, the FCDO filed an abusive Statement of Issues on Appeal, listing twenty-seven claims of error in a case in which there is no doubt that appellant was guilty and where the aggravators virtually ensured that any responsible jury would return a sentence of death.

The PCRA court again was required to set aside its caseload to prepare a 129-page opinion responding to the prolix, abusive claims, many of which were abjectly frivolous. For example, appellant falsely claimed that the appointment of trial counsel less than three weeks prior to trial amounted to a constructive denial of counsel. In forwarding his argument, appellant notably ignored the fact that counsel was appointed two days after his trial arraignment and six months prior to trial, and was fully prepared to litigate the guilt and penalty phases of the trial. Counsel believed, however, an additional lawyer would be helpful and asked the court to appoint another lawyer to aid him in litigating the case. The trial court granted the request. It is the appointment of the second lawyer that, the FCDO averred, amounted to a constructive denial of

counsel.  The PCRA court dismissed the claim noting that "[a]ppellant wasn't left without an attorney up until three weeks before trial, as [his] argument seems to suggest. Appellant was ably represented first by [trial counsel] and then by a team of competent trial counsel."  Id. at 59.  In a similar vein, appellant raised overlapping issues: for example he raised two separate issues challenging the same expert testimony.  Id. at 72-79.  Appellant also contended that his waiver of a jury was not knowing, but then separately argued, in the next issue, that he made an uninformed agreement to a bench trial.  Id. at pp. 52-56.  I offer these as but a few examples of the frivolous and duplicative issues pursued by the FCDO.

Not content to end the abuse with the PCRA court, the FCDO then fixed its attention on this Court.  After filing a notice of appeal, the FCDO filed three requests for extensions of time to file its brief, and subsequently asked for an additional three-day extension (which was never granted), as well as a request to exceed briefing page limitations.  Ultimately, a seventy-five page brief was filed late, raising a dozen principal claims, including thirty-one prolix footnotes in single-space type.  Following the filing of the Commonwealth's response, the FCDO filed a reply brief, but only after being granted another extension of time.  The FCDO then had the temerity to begin its argument on appeal with a claim that the PCRA court had denied appellant "full, fair and reliable PCRA review," an outrageous allegation given the time and resources the judiciary and the Commonwealth had to devote in the face of this federal attack – all in a case where guilt is not an issue.

As I have stated elsewhere, the FCDO's strategy has taken a substantial and unwarranted toll on the state trial level and appellate courts.  See Commonwealth v. Spotz, 99 A.3d 866, 875 (Pa. 2014) (Single Justice Opinion on Post-Decisional Motions by Castille, C.J.); Commonwealth v. Spotz, 18 A.3d 244, 329-30 (Pa. 2011) (Castille,

C.J., concurring); <u>Commonwealth v. Roney</u>, 79 A.3d 595, 644-46 (Pa. 2013) (Castille, C.J., concurring), <u>cert</u>. <u>denied</u>, 135 S.Ct. 56 (2014). Pennsylvania is not obliged to indulge the FCDO's obstructionist and unethical, continuing agenda. The time is past due to consider removing the organization from state capital matters.